UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRU KIDS INC.,

                Plaintiff,

   -against-

ZAZA R US and
NEDHAL Y. SALEH a/k/a NEDHAO SALAH,

                Defendants.
----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**23 CV 2260 (OEM)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff TRU Kids Inc. brings this trademark action against defendants Zaza R Us and Nedhal Y. Saleh a/k/a Nedhao Salah ("Seleh") alleging trademark dilution, trademark infringement, and false designation of origin under the Lanham Act and analogous claims under state law. Despite service of the summons and complaint, defendants have failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment against defendant Saleh[1] pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Ann M. Donnelly[2] referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, I respectfully recommend that plaintiff's motion for a default judgment should be granted as to its claims for trademark dilution and denied as to its claims for trademark infringement, false designation of origin, and unfair competition.

---

[1] The Clerk of Court denied plaintiff's request for a certificate of default against defendant Zaza R Us, as plaintiff only served a "John Doe" on behalf of this corporate defendant. See ECF Order dated June 15, 2023; ECF No. 10 at 1. Plaintiff only seeks a default judgment against defendant Saleh, the owner of Zaza R Us, in the instant motion. See ECF No. 15-2 at 10, n. 1.

[2] The action was subsequently reassigned to the Honorable Orelia E. Merchant on July 6, 2023.

## BACKGROUND[3]

Plaintiff, TRU Kids Inc. or "Toys R Us,"[4] is "one of the most, if not the most, famous and well-known toy stores in the history of the United States." Complaint, ECF No. 1 ¶ 2 ("Compl."). Defendant owns and operates Zaza R Us,[5] two Brooklyn-based retail stores that sell cannabis and related products. Id. ¶¶ 37, 38.

Plaintiff owns the registration for the Toys R Us marks and has used the marks continuously since 1960 in connection with its brick-and-mortar and online toy stores. Id. ¶¶ 22-25, 30. The Toys R Us mark features "multiple famous branding elements," including a "distinct bubble font, different colors for each letter, and a reverse R letter" with a five-pointed star. Id. at ¶ 24. Plaintiff owns 18 registrations with the United States Patent and Trademark Office for the Toys R Us marks, which vary slightly but all feature bubble font and a reverse R. Id. ¶ 27; ECF No. 1-1. These marks have been used "extensively to identify and promote the Toys R Us brand . . . as a distinct provider of retail toys and related goods and services." Compl. ¶ 31. As a result of plaintiff's multi-million-dollar media campaigns and efforts to promote its brand and protect its intellectual property, "Toys R Us [is] well-known and famous to generations of children and adults." Id. ¶¶ 32, 33. Toys R Us "dedicates immeasurable efforts and resources to ensure that [its] brand maintains a fun, safe, kid-friendly image." Id. ¶ 56.

---

[3] The facts are drawn from the uncontested allegations in plaintiff's complaint, as well as documents incorporated by reference, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

[4] Plaintiff TRU Kids Inc. refers to itself as Toys R Us throughout the complaint. See, e.g., ECF No. 1 at 1. Although the complaint does not set forth TRU Kids Inc.'s relationship to Toys R Us, plaintiff attaches five certificates of registration with the United States Patent and Trademark Office, all of which identify TRU Kids Inc. as the owner of the Toys R Us trademarks. See ECF No. 1-1 at 17-25. Moreover, plaintiff's website identifies TRU Kids as "the proud parent of beloved brands" including Toys R Us, Babies R Us, and Geoffrey the Giraffe. See TRU Kids Brands, https://www.trukidsbrands.com (last accessed Dec. 5, 2023).

[5] "Zaza" is a colloquial term for "high-grade strains of cannabis." Compl. ¶ 4.

Defendant owns and operates at least two retail stores under the name Zaza R Us that sell drug-related goods, including "pipes, bongs, cannabis, herbal stimulants, novelty items, accessories, [and] snacks." Id. ¶¶ 15, 37, 38. The exterior sign on defendant's Roebling Street location is "nearly identical" to the Toys R Us logo. Id. ¶ 43. Specifically, the Zaza R Us sign features letters in a bubble font with a different color for each letter and a blue reverse R with a five-pointed cannabis leaf in place of the five-pointed star. Id. ¶¶ 45-50. Defendant's Central Avenue store previously displayed a similar sign. Id. ¶ 44. The similarity of the Toys R Us logo and Zaza R Us logo is readily apparent in the color photos included in the complaint.



Id. ¶ 50.

Plaintiff alleges that defendant's Zaza R Us logo was designed to intentionally deceive customers into believing that the Zaza R Us stores were affiliated with or endorsed by Toys R Us. Id. ¶ 54. In January 2023, plaintiff served defendant with a cease-and-desist demand at the Roebling Street store location. Id. ¶ 53. Defendant did not respond to the demand. Id.

Plaintiff alleges trademark dilution, infringement, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Id. ¶¶ 61-68. Plaintiff also alleges trademark infringement, dilution, and unfair competition under New York statutory and common law. Id. ¶¶

69-73. Plaintiff seeks a permanent injunction against defendant's unlawful use of plaintiff's trademarks.[6] Id. at 16-17.

## PROCEDURAL HISTORY

Plaintiff filed the complaint in this action on March 23, 2023. ECF No. 1. Plaintiff filed proof of service of the summons and complaint on defendant Saleh pursuant to N.Y. C.P.L.R. § 308(2), which permits substituted service on an individual defendant by (1) delivery of the papers within the state to a person of suitable age and discretion at defendant's actual place of business or residence, and (2) mailing the papers by first-class mail to the defendant at his last known residence or actual place of business within 20 days of such delivery. ECF No. 11. Plaintiff's process server delivered the summons and complaint to an individual of suitable age and discretion at defendant's place of business.[7] Id. The process server also timely certified mailed copies of the summons and complaint to defendant's last known place of residence and last known place of business. Id.

Defendant failed to answer or otherwise respond to the complaint, and the Clerk of Court noted defendant's default pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 14. Plaintiff now moves for a default judgment against defendant Saleh. ECF No. 15. The motion was referred to me for a Report and Recommendation.

[6] Plaintiff's complaint also seeks an Order directing defendant to deliver to plaintiff for destruction all of the materials bearing the Zaza R Us mark; a report in writing confirming compliance with the permanent injunction and destruction of the Zaza R Us marks; an accounting of all gains, profits, and advantages derived from defendant's infringing use; damages of three times defendant's profits; and attorneys' fees and costs. ECF No. 1 at 16-17. However, plaintiff's instant motion only seeks a permanent injunction against defendant. ECF No. 15-2 at 29-30.

[7] The affidavit of service does not specify John Doe's relationship to defendant Saleh. ECF No. 11. However, this individual was present in defendant's retail store, represented to the process server that Saleh was not available, and accepted service of process on his behalf. Id. The process server averred that this John Doe individual was approximately 37 years old. Id. Under these circumstances, the Court finds that the process server delivered the papers to a person of suitable age and discretion. See Nationwide Mut. Ins. Co. v. Kaufman, 896 F. Supp. 104, 107 (E.D.N.Y. 1995) ("The person to whom delivery is made must objectively be of sufficient maturity, understanding, and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.") (quoting City of New York v. Chemical Bank, 470 N.Y.S. 2d 280, 285 (Sup. Ct. N.Y. Cty. 1983)).

## DISCUSSION

### I. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). "Accordingly, [a] plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it

remains for the Court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted).

## II. Liability for Trademark Dilution

### a. Federal trademark dilution

The Lanham Act allows the owner of "a famous mark that is distinctive" to enjoin a person from using a junior mark that is "likely to cause dilution by blurring or dilution by tarnishment of the famous mark," regardless of actual or likely consumer confusion. 15 U.S.C. § 1125(c); see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 736 F.3d 198, 205 (2d Cir. 2013). To establish a claim for trademark dilution under the Lanham Act, "a plaintiff must show that: (1) its mark is famous; (2) the defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark was famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment." Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 193 (E.D.N.Y. 2011).

### i. Distinctive, famous mark

A mark may either be inherently distinctive, or it may acquire distinctiveness by developing a "secondary meaning" in the public mind. Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 216 (2d Cir. 2012). A mark is inherently distinctive if "[its] intrinsic nature serves to identify a particular source." Id. (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992)). A mark's registration with the United States Patent and Trademark Office "creates the presumption that the mark is . . . inherently distinctive." Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). Plaintiff's

6

complaint attaches 18 certificates of registration for the Toys R Us marks, thus establishing that the mark is distinctive. See ECF No. 1-1.

A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). This requirement restricts dilution causes of action "to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." Luv N' Care, Ltd. v. Regent Baby Prod. Corp., 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012) (quotes omitted). "[C]ourts generally have limited famous marks to those that receive multi-million-dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." Deep Foods Inc. v. Deep Foods Inc., 419 F. Supp. 3d 569, 584 (W.D.N.Y. 2019) (citation omitted). In determining a mark's fame, the Court may consider all relevant factors, including:

(i)   The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
(ii)  The amount, volume, and geographic extent of sales of goods or services offered under the mark;
(iii) The extent of actual recognition of the mark; and
(iv)  Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

Plaintiff has established that the Toys R Us mark is famous. The Toys R Us mark has been in continuous commercial use in the United States and abroad since the 1960s in connection with plaintiff's toy stores, and has been registered with the United States Patent and Trademark Office since 1970. Compl. ¶¶ 22-23, 27. Plaintiff[8] holds 18 federal registrations for the Toys R Us marks, many of which contain distinctive branding elements, such as a unique bubble font,

---

[8] Although not set forth in the complaint, plaintiff submitted Toys R Us trademark registrations from December 26, 2022 that are all owned by TRU Kids Inc. See ECF No. 1-1 at 17-25

7

different colors for each letter, and a reverse R with a five-pointed star. Id. ¶¶ 24, 27. Plaintiff advertises the Toys R Us brand through multi-million-dollar media campaigns. Id. ¶ 32. As a result of these efforts, the Toys R Us mark is "well-known and famous to generations of children and adults" and serves as "a distinctive identifier of its goods and services." Id. ¶ 33; see also Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc., 559 F. Supp. 1189, 1207 (E.D.N.Y. 1983) (noting that Toys R Us' "unique use of an inverted capital R in quotation marks between the words 'Toys' and 'Us' has become well known to the consuming public as identifying plaintiff's stores and products, distinguishing them from other toy stores and children's products."). [9]

As such, plaintiff has pled sufficient facts to establish that the Toy R Us mark is famous and distinctive within the meaning of the Lanham Act's anti-dilution provision. Moreover, plaintiff's complaint establishes that defendant used the Zaza R Us mark in commerce "long after" plaintiff's first use of its Toys R Us mark. Compl. ¶¶ 37, 39.

  *ii. Tarnishment*

Dilution by tarnishment occurs when the "association arising from the similarity between a mark . . . and a famous mark . . . harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Dilution by tarnishment "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 43 (2d Cir. 1994). "The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." Hormel Foods Corp. v. Jim Henson

---

[9] District courts in other circuits have also found that the Toys R Us mark is famous. See Toys "R" Us, Inc. v. Smokes R Us of PA Corp., 11-CV-820, 2011 WL 2582899 (M.D. Pa. June 20, 2011) (characterizing Toys R Us as a "global 'super brand'"); Toys "R" Us, Inc. v. Akkaoui, No. 96-CV-3381, 1996 WL 772709, at *2 (N.D. Cal. Oct. 29, 1996) ("[T]he Court finds that the Toys 'R' Us family of marks were famous and distinctive before Defendants began identifying themselves as 'Adults R Us.'").

Prods., Inc., 73 F.3d 497, 507 (2d Cir. 1996). Tarnishment is not limited to associations with "seamy conduct" such as sexual activity, obscenity, or illegal activity. Id. Rather, a trademark may be tarnished "if the mark loses its ability to serve as a 'wholesome identifier' of plaintiff's product." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 110 (2d Cir. 2009) (quoting Hormel Foods Corp., 73 F.3d at 507).

Plaintiff "dedicates immeasurable efforts and resources to ensure that [the Toys R Us] brand maintains a fun, safe, kid-friendly image." Compl. ¶ 56. Zaza R Us connects Toys R Us with drug use—a far from kid-friendly association. See, e.g., Coca-Cola Co. v. Gemini Rising, Inc., 346 F. Supp. 1183, 1189 (E.D.N.Y. 1972) (finding that defendant's "Enjoy Cocaine" poster diluted the Coca-Cola trademark because "[t]o associate . . . cocaine with plaintiff's wholesome beverage . . . would clearly have a tendency to impugn that product"); cf. Hormel Foods Corp., 73 F.3d at 508 (denying dilution claim where there was no evidence that defendant's parodic use of plaintiff's SPAM trademark would cause negative associations with SPAM). Plaintiff's complaint sufficiently establishes defendant's liability for trademark dilution by tarnishment under the Lanham Act.

### iii. Blurring

Dilution by blurring occurs when the "association arising from the similarity between a mark . . . and a famous mark . . . impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). "Some classic examples of blurring include 'hypothetical anomalies [such] as Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth.'" Starbucks Corp., 588 F.3d at 105 (quoting Mead Data Cent., Inc. v. Toyota Motor Sales, 875 F.2d 1026, 1031 (2d Cir. 1989)). Dilution by blurring is "not a question of confusion; few consumers would likely confuse the source of a Kodak camera with the source of a 'Kodak'

piano." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 111 (2d Cir. 2010). Instead, blurring is the "whittling away" of the "selling power and value" of a famous mark through unauthorized use. Id. (quoting Mead Data Cent., Inc, 875 F.2d at 1031). In determining whether a famous mark has been diluted by blurring, courts consider the following non-exhaustive factors:

> (i) The degree of similarity between the mark or trade name and the famous mark;
> (ii) The degree of inherent or acquired distinctiveness of the famous mark;
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;
> (iv) The degree of recognition of the famous mark;
> (v) Whether the user of the mark or trade name intended to create an association with the famous mark; and
> (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

These factors weigh in plaintiff's favor. The Zaza R Us mark is nearly identical to the Toys R Us mark, albeit with a five-pointed cannabis leaf substituted for Toys R Us' five-pointed star. Compl. ¶ 50; see also Toys R Us, Inc, 559 F. Supp. at 1208 (finding a likelihood of blurring where defendant's mark included an "R Us" suffix); cf. Starbucks, 588 F.3d at 106 (finding that "Charbucks" mark was not substantially similar to "Starbucks" mark despite the similar sound and spelling, where, *inter alia*, defendant's design differed in imagery, color, and format from Starbucks' logo). The branding elements of the Toys R Us mark are unique, and the mark enjoys a high degree of distinctiveness. Compl. ¶¶ 24, 51. Plaintiff is the exclusive owner of the Toys R Us marks. Id. ¶¶ 26-30. Through plaintiff's considerable global advertising efforts, the Toys R Us marks are highly recognizable by the general public. Id. ¶ 33. Given the strong similarity between the Toys R Us and the Zaza R Us marks, it is reasonable to infer that defendant intended consumers to associate Zaza R Us with Toys R Us. Id. ¶¶ 54-55. The lack of evidence of any actual association between the marks does not compel a different outcome here, as the first five factors weigh in plaintiff's favor.

"Toys R Us cannabis" exemplifies the kind of trademark anomaly that the Lanham Act prohibits. While the Zaza R Us logo may have been designed in jest to parody a beloved children's toy store, defendant "may not invoke parody as a talisman to defeat liability under the Lanham Act." Schieffelin & Co. v. Jack Co. of Boca, 850 F. Supp. 232, 248 (S.D.N.Y. 1994). Plaintiff's complaint alleges sufficient facts to find defendant liable for dilution by blurring under the Lanham Act.[10]

### b. State law trademark dilution

Under New York General Business Law § 360-L, a plaintiff may obtain injunctive relief if plaintiff demonstrates "that it owns a distinctive mark and a likelihood of dilution." Est. of Ellington, 812 F. Supp. 2d at 193–94 (citation omitted). As the Court has already found that plaintiff owns the famous Toys R Us mark, the only question is whether there is a likelihood of dilution under state law. See George Nelson Found. v. Modernica, Inc., 12 F. Supp. 3d 635, 651 (S.D.N.Y. 2014) ("Since Plaintiff has met the more rigorous standard for fame under the Lanham Act, this discussion focuses on dilution by blurring.").

"Dilution under New York law can involve either blurring or tarnishment." New York Stock Exch., Inc. v. New York, New York Hotel LLC, 293 F.3d 550, 557 (2d Cir. 2002); Van Praagh v. Gratton, 993 F. Supp. 2d 293, 304 (E.D.N.Y. 2014) (explaining that New York's anti-dilution statute "has been interpreted to provide for protection against both dilution by blurring and tarnishment") (citation omitted).

---

[10] Plaintiff also alleges that defendant's conduct was willful. Compl. ¶¶ 53-55. A finding of willfulness is a precondition to an award of profits in a Lanham Act trademark dilution claim. See Romag Fasteners, Inc v. Fossil, Inc., 590 U.S. _ _, 140 S. Ct. 1492, 1495 (2020). In the instant motion, plaintiff seeks only injunctive relief, and does not seek an award of profits. ECF No. 15-2 at 30. The Court need not determine willfulness on the instant motion.

Like under federal law, state law dilution by tarnishment "occurs where a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" New York Stock Exch., Inc., 293 F.3d at 558 (quoting Deere & Co., 21 F.3d at 43). Plaintiff's complaint also establishes defendant's liability for trademark dilution by tarnishment under state law.

Plaintiff's state law claim for dilution by blurring is subject to a slightly different analysis. "In contrast with federal trademark dilution law, [New York's dilution law] does not require that the mark be famous; requires only a mere likelihood of dilution; and requires that the marks are substantially similar." Van Praagh, 993 F. Supp. 2d at 305. To determine a likelihood of blurring under New York State law, the Court considers the following factors: "(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." New York Stock Exch., Inc., 293 F.3d at 558.

The Court has already found that the marks are substantially similar—indeed, they are nearly identical, with "Zaza" in place of "Toys" and a cannabis leaf in place of a star. Cf. E.A. Sween Co., Inc. v. A & M Deli Express Inc., 787 F. App'x 780, 784 (2d Cir. 2019) (finding two marks to be dissimilar where they employed different font, colors, and arrangement). Although the two products at issue—children's toys and cannabis—are starkly dissimilar, and plaintiff has not alleged the sophistication of its consumer base, the Court finds that plaintiff has sufficiently pled defendant's liability for dilution by blurring under state law. See Mead Data Cent., Inc., 875 F.2d at 1038 (Sweet, J., concurring) ("[A] plaintiff possessing a nationally famous mark needs to focus less on other factors, such as similarity of the products or sophistication of the consumers,

12

to establish blurring."). Toys R Us certainly enjoys more renown than Zaza R Us. Because the Zaza R Us logo so closely mimics the Toys R Us logo, it is reasonable to infer that defendant acted with predatory intent. See id. at 1037 (explaining that predatory intent "requires a showing that the junior user adopted its mark hoping to benefit commercially from association with the senior mark"). Defendant's Zaza R Us mark "trade[s] on the goodwill associated with Toys R Us marks." and "deceive[s] the public by misleading consumers into believing that [defendant's goods and services] emanate from . . . or are in some way associated or connect with Toys R Us." Compl. ¶¶ 55, 57. Under these circumstances, plaintiff has demonstrated a likelihood of dilution by blurring under state law. Therefore, the Court should grant plaintiff's motion for a default judgment on its claims for dilution under state law.

### III.  Liability for Trademark Infringement and False Designation of Origin

The Court will address plaintiff's claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under New York common law together, as courts "employ substantially similar standards when analyzing" these claims. Deep Foods Inc., 419 F. Supp. 3d at 578 (quoting Van Praagh, 993 F. Supp. 2d at 301).

To prevail on a claim for trademark infringement, a plaintiff must show that "(1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 84 (2d Cir. 2020) (quoting The Sports Auth., Inc. v. Prime Hospitality Corp., 89 F. 3d 955, 960 (2d Cir. 1996)). To prevail on a false designation of origin claim, plaintiff must establish that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Deep Foods Inc., 419 F. Supp. 3d at 578 (citation and quotation marks omitted). "Generally, the

same facts that support a claim of trademark infringement will suffice to state a valid claim for false designation of origin." Id. (citation omitted).

Plaintiff submitted proof of ownership of 18 registrations of the Toys R Us mark, which are valid and entitled to protection under the Lanham Act. ECF No. 1-1; declaration of Adam Siegartel, Esq., ECF No. 15-3 ¶ 5; see also Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc., 192 F.3d 337, 345 (2d Cir. 1999); 15 U.S.C. § 1115(a).

However, plaintiff failed to establish a likelihood of consumer confusion. "The crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir. 2004) (citing Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 47 (2d Cir. 1978)). The Second Circuit has set forth eight non-exhaustive factors to guide the Court's determination of the likelihood of consumer confusion:

> (1) the strength of the trademark;
> (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use;
> (3) the proximity of the products and their competitiveness with each other;
> (4) the likelihood that the plaintiff will 'bridge the gap' by developing a product for sale in the defendant's market;
> (5) evidence of actual consumer confusion;
> (6) evidence that the defendant adopted the imitative term in bad faith;
> (7) the respective quality of the products; and
> (8) the sophistication of the relevant population of consumers.

Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 84–85 (2d Cir. 2020) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)).

The first two factors weigh in plaintiff's favor: the Toys R Us mark is famous, and defendant's Zaza R Us logo is a conspicuous imitation of that mark. Plaintiff has also alleged

facts to support defendant's bad faith, given this mimicry and defendant's failure to respond to plaintiff's cease-and-desist demand. Compl. ¶¶ 53, 55.

However, consumers are not likely to be confused about the source of Zaza R Us' goods. There is no proximity between the products. Toys R Us markets children's toys and games; Zaza R Us markets cannabis, pipes, and bongs. See Rolex Watch U.S.A., Inc. v. Rolex Deli Corp., No. 11-CV-9321, 2012 WL 5177517, at *2 (S.D.N.Y. Oct. 18, 2012) (finding no likelihood of consumer confusion between Rolex watches and Rolex Deli, as Rolex watches are "a far cry from products sold in a delicatessen"). Moreover, it is unlikely that Toys R Us will bridge the gap and enter New York's newly-legal cannabis industry. Plaintiff has not alleged any actual consumer confusion, and the products offered by Toys R Us and Zaza R Us are so dissimilar as to make any comparison of their respective qualities an exercise in absurdity. Finally, the Court is "confident that consumers will be sufficiently sophisticated" as to differentiate between plaintiff's toy stores and defendant's cannabis dispensary. Rolex Watch U.S.A., Inc., 2012 WL 5177517 at *2. Therefore, "there is simply no confusing correlation in this case." Id.

As defendant's use of the Zaza R Us mark is not likely to engender consumer confusion with the Toys R Us mark, the Court should deny plaintiff's request for a default judgment as to its claims of trademark infringement, false designation of origin, and unfair competition.

## IV.    Injunctive Relief

Plaintiff seeks an order permanently enjoining defendant from further unlawful use of plaintiff's Toys R Us marks.[11] ECF No. 12-5 at 29-30. The Lanham Act authorizes the Court to grant injunctive relief to prevent further violations of the Act, and a Court may do so on a motion

---

[11] Plaintiff does not seek monetary damages or an award of costs and attorneys' fees in the instant motion. ECF No. 15-2 at 30. Plaintiff requests that if defendant violates the terms of the permanent injunction, it should be "permitted to seek all available monetary damages and other monetary and non-monetary remedies arising out of this action" as well as attorneys' fees and costs. Id. Plaintiff also seeks that this Court retain continuing jurisdiction over the subject matter of the action for the purpose of "interpreting and enforcing" the terms of this judgment. Id. at 31.

for a default judgment. See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015); 15 U.S.C. § 1116(a). Moreover, the owner of a famous and distinctive mark is entitled to an "injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. 1125(c). New York's anti-dilution statute also provides for this injunctive relief. Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd., 626 F. Supp. 3d 635, 653 (S.D.N.Y. 2022), appeal withdrawn, No. 22-CV-2106, 2022 WL 21295717 (2d Cir. Nov. 14, 2022) (quoting N.Y. Gen. Bus. Law § 360-1).

"A permanent injunction is warranted where a party has succeeded on the merits . . . and establishes (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Est. of Ellington ex rel. Ellington, 812 F. Supp. 2d at 196 (internal citation omitted).

As plaintiff has established that it is entitled to a default judgment with respect to its claim for trademark dilution, plaintiff has succeeded on the merits of this claim. See Rolex Watch U.S.A., 2012 WL 5177514 at * 5. Additionally, "[u]pon a finding of trademark dilution, a plaintiff seeking a permanent injunction 'shall be entitled to a rebuttable presumption of irreparable harm.'" Diageo N. Am., Inc, 626 F. Supp. 3d at 653 (quoting 15 U.S.C. § 1116(a)). Defendant has not appeared in this action, and thus has not rebutted this presumption.

Further, plaintiff has demonstrated that it has no adequate remedy at law. Defendant did not respond to plaintiff's demand to cease and desist use of the Zaza R Us logo and failed to defend this lawsuit. A court may infer that a defaulting defendant is willing to continue its unlawful conduct. Kelly Toys Holdings, LLC v. alialialiLL Store, 606 F. Supp. 3d 32, 52–53 (S.D.N.Y. 2022) (finding an adequate remedy at law to be "elusive" where defendants defaulted). As such, a permanent injunction is warranted here, "where the record contains no assurance against defendant's continued violation" of plaintiff's rights. Id. at 52 (quoting Montblanc-Simplo GMBH v. Colibri Corp., 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010)). Moreover, plaintiff claims that defendant has damaged plaintiff's reputation and goodwill—harm that is difficult to quantify, and thus difficult to remedy with monetary damages. See New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) ("Irreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'") (quoting Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985)).

A balance of the hardships also tips in plaintiff's favor. As defendant has defaulted, the Court has not been presented with any argument that a permanent injunction would pose a significant hardship to defendant. Moreover, "a dilutor cannot complain about the loss of its ability to sell a diluting product." Diageo N. Am., Inc., 626 F. Supp. 3d at 655. Plaintiff has expended considerable resources to protect its intellectual property, and the Zaza R Us mark continues to dilute the Toys R Us mark. See Rolex Watch U.S.A., Inc., 2012 WL 5177517, at *5 ("[T]he balance of hardships favors Rolex Watch because the unauthorized use continues to dilute the distinctiveness of its famous mark.").

Finally, "the public interest will best be served by an injunction ensuring compliance with the Lanham Act" and protecting plaintiff's ownership of the Toys R Us mark. Rolex Watch U.S.A., Inc., 2012 WL 5177517, at *5; see also Diageo N. Am., Inc., 626 F. Supp. 3d at 655 ("[The] public interest in the prevention of dilution is shown by the passage of both federal and state legislation providing for injunctive relief for that purpose.").

Accordingly, the Court finds that a permanent injunction is warranted. I respectfully recommend that the Court enter the following Order (proposed by plaintiff):

> Defendant, their agents, servants, officers, directors, employees, partners, representatives, successors, and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, shall be permanently enjoined from:
>
> a. Any use, manufacture, production, sale, distribution, advertisement, promotion, display, signage, reproduction, or other exploitation of the ZAZA R US mark in any form, whether standing alone or in conjunction with any other words or design elements, including but not limited to the three-word "Zaza R Us" phrase and the ZAZA R US logo displayed . . . in the Complaint at ¶¶ 5, 43, 50;
> b. Any use of Plaintiff's TOYS R US Marks or any other marks, logos, designs, products, designations, displays, or any other indicia that are dilutive of or confusingly similar to Plaintiff's TOYS R US Marks, or that otherwise violate Plaintiff's rights in its TOYS R US Marks;
> c. Committing any other acts calculated or likely to cause consumers to believe that Defendant or Defendant's goods or services are in any manner affiliated with, associated with, connected with, or sponsored or approved by Plaintiff; and
> d. Committing any other acts likely to infringe, dilute, or otherwise violate Plaintiff's rights in its TOYS R US Marks or that constitute unfair competition with Plaintiff.

ECF No. 15-1 ¶ 3.

Additionally, defendant should be required to file with the Court and serve on plaintiff within 30 days from the date of entry of final judgment a report under oath detailing the manner of compliance with this injunction. See 15 U.S.C. § 1116. I also recommend that the Court should retain jurisdiction over this action for the purposes of implementing and enforcing the permanent injunction.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant plaintiff's motion for default judgment as to plaintiff's claim for trademark dilution, and should permanently enjoin defendant from use of the Zaza R Us mark. The Court should deny plaintiff's motion for default judgment as to the claims for trademark infringement, false designation of origin, and unfair competition because plaintiff did not establish a likelihood of consumer confusion. Plaintiff is hereby ordered to serve a copy of this Report upon defendant at his last known address and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                  /S/
                                        LOIS BLOOM
                                        United States Magistrate Judge

Dated: December 11, 2023
       Brooklyn, New York